Cayuga Linen & Cotton Mills, Inc., Plaintiff and Appellant, v. Crédito y Ahorro Ponceño, Defendant and Appellee.

No. 4706. Argued June 27, 1929.—Decided July 29, 1930.

*Besosa & Besosa* for appellant.    *M. Marcos Morales* for appellee.

Mr. Justice Wolf delivered the opinion of the Court.

We are agreed with the court below that the facts and conclusions to be drawn in this case are more or less as follows: The Cayuga Linen & Cotton Mills, Inc., a corporation of New York, with its principal office at Albany, New York, presented a complaint before the District Court of San Juan

to recover the sum of $1,609.86 and interest. The suit was filed against the Crédito y Ahorro Ponceño, a Puerto Rican corporation with its principal office in the city of Ponce, and for that reason the case was transferred to the last named city. The complaint set up that on the 7th of September, 1924, the parties entered into a contract whereby the complainant sold to the defendant twenty boxes of 150 lbs. each of cloth to wrap up tobacco, at the price of 38¢ a pound, f. a. s. (*al costado del vapor*), to be shipped in the last week of November; that the complainant shipped the said merchandise in accordance with the contract and drew against the defendant for $1,609.86 with freight to San Juan and insurance; that the draft was not accepted despite the fact that the defendant had accepted the merchandise, and likewise, despite the request for payment the complainant had not been paid all or any part of the said amount.

The defendant made some denials, and the case was at issue on the 16th of September, 1927, and then, after various motions on the part of the plaintiff, the case was finally set for the 27th of January, 1928. The court then goes on to set out the evidence that was submitted by the parties, and then held that the following facts had been proved: That the Cayuga Linen & Cotton Mills, Inc., of New York, sold to the Crédito y Ahorro Ponceño, of Cayey, Puerto Rico, through the firm of Fernández & Pérez, of San Juan, Puerto Rico, twenty boxes of cloth to wrap up tobacco, etc.; that the merchandise the object of the sale was shipped on the port of Baltimore, State of Maryland, U.S.A., consigned to the defendant at the port of San Juan, Puerto Rico, and that this merchandise, when it was opened in Puerto Rico and examined by the defendant, proved to be damaged, inasmuch as it was completely soaked with water (*mojada con agua*) and proved to be worthless. It was an admitted fact by the parties that Fernández & Pérez were the agents and representatives of the complainant in Puerto Rico, and that the

merchandise was damaged by water; that there was no controversy with respect to these facts, but there was one with reference to who should suffer the loss, each party claiming that the other should suffer it; that in support of its theory the plaintiff maintained that the merchandise was sold f. a. s. Baltimore, Md., and this constituted a formal delivery to the defendant, and that all the risk and damage that the merchandise suffered from that moment until its arrival at Puerto Rico would have to be endured by the defendant; and the defendant maintained that the delivery had to be made in Puerto Rico in the month of November, 1925, that the merchandise did not arrive until January, 1926, and that any damage which the merchandise suffered until it was delivered to the defendant would have to be borne by the complainant, and, besides, that there was no formal delivery, and that, even if there had been, the merchandise was returned to the complainant.

The court then proceeded to discuss the abbreviations "f. a. s." and "f. o. b.", and cited authorities that these words mean "the price to be charged at the time of such delivery". The court said that there was no doubt that the initials "f. a. s." were used in connection with the price of the merchandise, and not to indicate the place of delivery. Necessarily, the court and everybody else in the case agreed that if the contract contemplated a formal delivery at the side of the vessel, the defendant would be responsible. The court held that there was no special agreement to this effect, and therefore, the condition would have to be determined from the proof. The court showed that the contract said that the merchandise be shipped to the Crédito y Ahorro Ponceño of Cayey, Puerto Rico, consigned to the port of San Juan, Puerto Rico, and that until the complainant delivered the merchandise in the port of Puerto Rico there was no formal delivery, and the title remained in the complainant, and citing from 24 R.C.L. 47, the court uses the English words "The risk follows the title".

That the plaintiff, however, did not deliver the goods to the port of New York as the contract seemed to indicate, but delivered them in Baltimore, was another conclusion of the court by which the plaintiff could not maintain that the title had passed to the defendant by reason of the delivery to the ship. The court furthermore held that the intention of the parties that the plaintiff should retain the title until the goods were delivered in Puerto Rico was evidenced by the execution of a bill of lading and a draft sent to the National City Bank of New York; that when the plaintiff intends to deliver the title he does not ordinarily send a bill of lading, but retains the title to the merchandise until a formal delivery is made. The court went on to say that it could not be said that the defendant received and accepted the merchandise because the proof showed that the general agents of the complainant retained it without getting the bill of lading or the invoice and because the defendant had a right to examine the merchandise and to refuse to accept it if it was not in a serviceable state; that not only was there no formal delivery to the defendant, but that the contract was never perfected, because before the formal delivery, in the process of examining and in noting by the defendant that it was rendered useless by water and in calling the attention of the plaintiff, the latter by its general agents in Puerto Rico, Fernández & Pérez, ordered that the defendant return the merchandise to dock No. 5, of San Juan, Puerto Rico. The court then entered into further considerations to the effect that Fernández & Pérez were the general agents of the Cayuga Linen & Cotton Mills, Inc., and that even if the title had passed to the purchaser it would have devolved upon the vendor by the return of the goods and their acceptance by the vendor.

As a final conclusion the court said that the defendant was not obliged to accept the goods because the contract called for a delivery in November and they were not delivered until January, 1926.

The appellant assigned several errors by reason of the failure of the District Court of Ponce to postpone the trial, and then proceeded to assign other errors to the effect that the judgment was against the evidence. It strikes us it would be slightly better if an appellant upon attacking the judgment as a whole for failing to follow the evidence should make a greater specification. For example, that the evidence tended to show that the defendant accepted the goods and that any attempted return thereof was to its own agents, inasmuch as the Crédito y Ahorro Ponceño constituted Fernández & Pérez its own agents for the purpose of taking charge of the goods.

The appellant says that there was no evidence that Fernández & Pérez were the agents of the complainant, but Mr. Fernández himself took the stand and gave evidence tending to show that he was such general agent.

Now, while there is a general principle of law that the declarations of an agent are not competent to prove the agency, this only applies to declarations made out of court when quoted by others, and an agent is perfectly competent to testify as to his agency, although the weight of his testimony is a different matter, especially with respect to the extent of the agency. That an agent may so testify is a conclusion to be derived from the following authorities: *Render et al.* v. *Ragan et al.*, 102 Pac. 427; *Joslyn* v. *Cadillac Automobile Co.*, 177 Fed. 863; 2 C. J. 933, where it is said: "The rule that the declarations of an agent are, as against his principal, inadmissible to prove the fact of his agency does not apply to his testimony as a witness on the trial in which such fact is in issue."

Perhaps in some of our opinions we have not made this distinction as carefully as it should have been, because the matter was heretofore never directly involved. For example, in *Orange Rice Milling Co.* v. *Barasorda*, 40 P.R.R. 480, 482, we said that "Aside from the general principle that

an agency is not to be proved by the sole declaration of an agent, the whole record does not reveal any such general agency.'' The case, however, did not turn upon the fact of agency, but the extent thereof, and the statement, so far as it applied to the testimony of the agent in that case, was mere *obiter dictum.*

In the present case not only the declarations of Mr. Fernández, who was the principal witness in the case, but the whole evidence tended to show that Fernández & Pérez were such general agents of the plaintiff, and that their every act was in the interest of the said plaintiff. It is true that before the delivered goods were returned to them, the defendant through its agent wrote a letter to them asking them to take charge of the goods. But a reading of the evidence convinces us that by this letter the defendant did not make Fernández & Pérez its own agent, but that Fernández & Pérez, who sold the goods originally, took charge of them in the name of the plaintiff, and we also conclude that they had authority so to do.

We have no question that the words ''f. a. s.'' or ''f. o. b.'' when used in connection with the price, as in this case, do not serve to transfer the title. If any doubt there was, we should still be inclined to hold that the purchaser should have some intervention in determining the carrier who is to be his agent, and the carrier in this case as named by the parties was to be from the port of New York, and not from the port of Baltimore. The very authorities quoted by the appellant tend to show these conclusions, at least in great part.

We have no question that the intention not to transfer the title was revealed by the sending of a draft and a bill of lading to the National City Bank. We have no doubt at all that the merchandise arrived damaged and that the defendant had a right to refuse to receive it. Likewise, we agree with the court that the merchandise was returned at the instance or with the full consent of Fernández & Pérez, who were the

agents of the plaintiff. Perhaps we should not make a great
point upon the failure of the plaintiff to deliver the goods
in November, but we agree with the appellee that the contract
called for such a delivery.

Another assignment of error goes to the fact that there
was some evidence tending to show that the defendant re-
tained a part of the goods. In this regard the evidence also
showed that the defendant refused to accept the delivery and,
as the appellee points out, there was no satisfactory evidence
of the amount of undamaged goods actually retained, or the
price thereof, or what amount was contained in the two boxes
supposed to be held by the defendant. The appellant does
not put us in a position to determine the amount if the
defendant was liable therefor.

The first assignment of error says that the District Court
of Ponce abused its discretion in not postponing the setting
of the case made *motu proprio* by the court and refusing to
give sufficient time to the complainant to obtain by way of
depositions the testimony of essential witnesses who did not
reside in Puerto Rico. We shall give this assignment of
error no great amount of attention, because we are entirely
satisfied that the complainant failed to show the importance
of this testimony, and more especially, we do not see how the
proposed depositions could have changed the result of the
case. Formally, we do not think the appellant can complain
of the exercise of the court's discretion in refusing to post-
pone the trial of the case when the same had been in issue for
several months. We would acquit the counsel of any re-
sponsibility for their failure to obtain the depositions before,
as the record discloses that they made every effort to obtain
them. Either with respect to this assignment of error or a
similar one, the appellant complains that the court had in
point of fact agreed upon a postponement, and then changed
its mind without giving the plaintiff a five-days' notice, or
something to the effect of a lack of a five-days' notice. We

have looked in the record for the verification of this statement, and we do not find it, and our recollection is that the appellant did not indicate the pages of the record on which it was to be found.

Neither do we find that the court committed error in refusing to suspend a trial to obtain the statement of another witness who was then at Coamo Springs. We may simply say that the plaintiff does not convince us that the court abused its discretion in refusing to continue the case in the midst of the trial.

Perhaps we have not touched upon some of the points raised by the appellant, but our reading of the record and the briefs convinces us that the judgment in any event would have to be affirmed.

The judgment appealed from will be affirmed.

Mr. Justice Texidor took no part in the decision of this case.